**Marlon Jermaine GULLY,
Applicant–Appellant,**

v.

**STATE of Iowa, Respondent–Appellee.**

No. 01–1769.

Court of Appeals of Iowa.

Dec. 11, 2002.

Philip Mears of Mears Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Kristin Mueller, Assistant Attorney General, Patrick Jackson, County Attorney, and Amy Snook, Assistant County Attorney, for appellee.

Heard by SACKETT, C.J., and VAITHESWARAN and EISENHAUER, JJ.

SACKETT, Chief Judge.

Applicant-appellant Marlon Gully appeals the district court's denial of his application for postconviction relief following his guilty plea and sentence for second-degree sexual abuse, enhanced, in violation of Iowa Code sections 709.3 (1997), 901A.1(a) and 901A.2(3); third-degree kidnapping, in violation of sections 710.1 and 710.4; and first-degree burglary, in violation of sections 713.1 and 713.3. Applicant claims that the district court improperly sentenced him to an enhanced term of incarceration on the sexual abuse charge pursuant to Iowa Code section 901A.2(3),

and that he was rendered ineffective assistance of counsel for several reasons. We affirm applicant's conviction but modify his sentence to strike the enhancement on the second-degree sexual abuse conviction.

## I. BACKGROUND FACTS AND PROCEEDINGS

According to the minutes of testimony, between 4:30 and 5:00 a.m. on July 28, 1997, in Burlington, Iowa, Marcy Rooney awoke to find an unknown assailant in her bedroom, tugging on her shorts. She did not see the assailant's face but noticed he wore a gold ring. The assailant threw a jacket over her head and raped her at gunpoint. He repeatedly penetrated her vagina and anus with his penis while holding a gun to her temple and threatening her not to look at him. He also penetrated her vagina with his gun, and following that, with a bottle of lotion, squeezing the lotion into her vagina. Following the sexual assault, the assailant tied Marcy's hands behind her with a pillowcase, wrapped a sheet around her face, and forced her into the closet. After waiting in the closet for about ten minutes, Marcy proceeded downstairs in the apartment where she found the screen to the living room window had been removed, the rear door was open, and the phone was off the hook.

Following the incident authorities were informed by Cynthia Caulkins that she had lent applicant a BB gun the night of the assault. She indicated that he was making advances to women at a party he attended and that he had left around 4:30 the morning of July 28. She further indicated he was wearing a gold ring. Authorities discovered applicant had previously registered in Des Moines County as a sex-offender but had transferred his parole to the State of Missouri. Believing that applicant may have returned to Des Moines

County from Missouri and failed to re-register, Detective Klein located him. The applicant indicated he had come to Des Moines County only for a short time and that he was leaving the following day. Applicant had no money on him or other proof that he had just arrived in Des Moines County and would be leaving the next day. Detective Klein arrested the applicant on grounds of failing to register as a sex offender. He advised him of his *Miranda* rights. Applicant signed a waiver of those rights and spoke with authorities. Applicant later signed a form consenting to a blood test. DNA from that blood test was linked to DNA in the sperm found in Marcy Rooney's vaginal area following the sexual assault.

Applicant was charged with the crimes of sexual assault, kidnapping and burglary arising out of the incident. After a series of negotiations, applicant pled guilty to second-degree sexual abuse, third-degree kidnapping, and first-degree burglary on December 23, 1998. On that same date applicant was sentenced to a fifty-year enhanced sentence for the second-degree sexual abuse conviction, a ten-year sentence for the kidnapping conviction, and a twenty-five year sentence for the first-degree burglary conviction. These sentences were to run concurrently.

## II. LEGALITY OF APPLICANT'S ENHANCED SENTENCE

Applicant was given the fifty-year enhanced sentence for the second-degree sexual abuse conviction pursuant to Iowa Code section 901A.2(3), enacted on July 1, 1996. This section provided as follows:

A person convicted of a sexually predatory offense which is a felony, who has a prior conviction for a sexually predatory offense, shall be sentenced to and shall serve twice the maximum period of incarceration for the offense, or twenty-

five years, whichever is greater, notwithstanding any other provision of the Code to the contrary. A person sentenced under this subsection shall not have the person's sentence reduced under chapter 903A or otherwise by more than fifteen percent.

The sentencing court applied this enhancement provision to applicant's sentence on the basis that applicant had a prior conviction in 1991 for sexual abuse, and therefore was to be sentenced to twice the maximum twenty-five year sentence on his current sexual abuse conviction.

Applicant filed a notice of appeal. His counsel on direct appeal, Stephan Japuntich of the State Appellate Defender's Office, deemed applicant's appeal to be frivolous, and filed a motion to withdraw from the case on July 29, 1999, pursuant to Iowa Rule of Appellate Procedure 6.104.[1] Applicant filed a motion resisting his counsel's motion to withdraw on August 11, 1999. The supreme court did not dismiss applicant's appeal until March 15, 2000.

During the time in which Mr. Japuntich's motion to withdraw and applicant's direct appeal were pending, which was specifically July 29, 1999 to March 15, 2000, the Iowa Supreme Court decided *State v. Tornquist*, 600 N.W.2d 301 (Iowa 1999). In that case, decided on September 9, 1999, the supreme court interpreted Iowa Code section 901A.2(3), the same section under which applicant's sentence for his sexual abuse conviction had been enhanced. The supreme court interpreted the enhancement provisions of section 901A.2 to operate prospectively only; that is, only convictions occurring after chapter 901A became effective on July 1, 1996 could be used to enhance a sentence imposed for a subsequent conviction of a sexually predatory offense. *Tornquist*,

600 N.W.2d at 307. As stated earlier, the conviction used for enhancement in applicant's case had occurred in 1991. Under a plain reading of *Tornquist* at the time it was filed, applicant's sentence would have been illegal.

■ On postconviction review, in which applicant filed a motion to vacate his sentence, the district court denied applicant's motion for several reasons. The court initially concluded that applicant could not rely on subsequent reasoning by the supreme court in the 1999 *Tornquist* opinion to invalidate his pre-*Tornquist* 1998 sentence. In *State v. Ortiz*, 618 N.W.2d 556, 561–62 (Iowa 2000), the supreme court concluded that a sentence based upon an improper interpretation of a statute could be vacated at any time, with or without objection by the applicant. We similarly conclude that the interpretation of section 901A.2 in *Tornquist* may appropriately vacate an earlier sentence pursuant to that section if the sentence was based upon an improper interpretation of a statute. *Ortiz*, 618 N.W.2d at 561–62.

The district court further relied upon two additional factors in concluding applicant's sentence was valid even if it were proper to apply the subsequent *Tornquist* reasoning to his 1998 sentence. First, in March of 2000, in apparent response to the supreme court's interpretation of section 901A.2 in *Tornquist*, the legislature amended chapter 901A. Amended chapter 901A stated, in subsection 901A.1(2)

2. As used in this chapter, the term "prior conviction" includes a plea of guilty, deferred judgment, deferred or suspended sentence, or adjudication of delinquency, *regardless of whether a prior conviction occurred before, on, or after the effective date of this Act.*

(Emphasis added). The amendment also repealed sections 901A.3, relating to trial

---

1.  Formerly, Iowa Rule of Appellate Procedure    104.

information or indictment in cases involving a sexually predatory offense and sentence enhancement for subsequent offenses, and 901A.4, relating to findings that an offense is a sexually predatory offense and notice that a conviction for such an offense will enhance punishment for any future similar offenses. The legislature further provided that, due to the "immediate importance" of the act, the amendment was to "[take] effect upon enactment." 2000 Iowa Acts ch. 1030, § 4.

Second, in *State v. DeCamp*, 622 N.W.2d 290, 293 (Iowa 2001), the supreme court, interpreting another code section, revisited its *Tornquist* decision and expressly disavowed the prospective application analysis it had used in *Tornquist*. In disavowing this analysis in *Tornquist*, the court emphasized that, with respect to the principle that statutes are presumed to apply prospectively unless otherwise indicated, the only relevant action for the purpose of determining the prospective or retrospective application of a statute is the commission of the acts making up the elements of the current offense. *DeCamp*, 622 N.W.2d at 293. In the court's words, "[T]he only acts at issue for the purpose of determining whether a statute providing for an enhanced sentence for prior convictions offends the principles of prospective application of a statute are the acts that make up the latest offense." *Id.* at 294.

In denying applicant's motion to vacate his sentence, the district court concluded that the above statutory amendment and subsequent *DeCamp* decision disavowing the reasoning of *Tornquist* were adequate legal support to deny applicant's motion to vacate his sentence, as they effectively invalidated the *Tornquist* grounds upon which he was challenging his sentence.

■ Applicant's first argument in this appeal of his application for postconviction relief is that his 1998 sentence, which was enhanced based upon a 1991 crime, was illegal under *Tornquist*. In making this argument applicant contends *Tornquist* is still controlling authority with respect to crimes committed before the legislature amended chapter 901A in March of 2000. Applicant claims that although the statutory amendment to chapter 901A may alter sentences subsequent to the enactment of the amendment in March of 2000, using the amendment to enhance applicant's sentence prior to its effective date would be a violation of applicant's ex post facto rights under the United States and Iowa Constitutions. *See State v. Corwin*, 616 N.W.2d 600, 602 (Iowa 2000). Applicant claims in the alternative that even if *Tornquist* is *not* controlling authority with respect to crimes committed prior to March of 2000, his appellate counsel nevertheless rendered ineffective assistance not to challenge applicant's sentence during the pendency of applicant's direct appeal.

When a district court's application of a sentencing statute is challenged, we review for correction of errors at law. *State v. Edgington*, 601 N.W.2d 31, 32 (Iowa 1999). However, when there is an alleged denial of a constitutional right, our review is de novo. *Osborn v. State*, 573 N.W.2d 917, 920 (Iowa 1998).

■ In support of his argument that *Tornquist* is still controlling authority in his case, applicant contends that the enhancement of his sentence under the March 2000 amendments violates the ex post facto provisions of our federal and state constitutions. *See* U.S. Const. art. I, § 10, cl. 1 ("No State shall ... pass any ... ex post facto Law."); Iowa Const. art. I, § 21 ("No ... ex post facto law ... shall ever be passed."). The constitutional prohibition of ex post facto laws "forbids application of a new punitive measure to conduct already consummated where it operates to the detriment or material disad-

vantage of the accused." *State v. Walker,* 506 N.W.2d 430, 433 (Iowa 1993) (quoting *State v. Quanrude,* 222 N.W.2d 467, 469–70 (Iowa 1974)); *see also State v. Soppe,* 374 N.W.2d 649, 652 (Iowa 1985) (ex post facto clause is violated when a statute "makes more burdensome the punishment for a crime, after its commission") (quoting *Beazell v. State,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216, 217 (1925)). Applicant also refers us to two cases in which the *Tornquist* opinion was used as authority to deem a sentence drawing upon pre–1996 sexual abuse crimes illegal, namely *State v. Harrington,* 608 N.W.2d 440 (Iowa 2000), and *State v. Bennett,* No. 99–1321, 2001 WL 726377 (Iowa Ct.App. June 29, 2001).

The State responds that the amendments to chapter 901A clarified the statute rather than changing it, and their application to applicant therefore does not violate ex post facto laws. The State cites to, among other cases, *State v. Dean,* 357 N.W.2d 307, 309 (Iowa 1984) in making its argument that an amendment which merely clarifies the meaning of a statute may be looked at to determine what rights existed under the original act. Given this reasoning, the State urges us to conclude that the chapter 901A amendments allowing enhancing crimes to have occurred at any time actually clarified the 1996 enhancement statute and therefore render applicant's sentence valid. The State also refers us to *State v. Guzman–Juarez,* 591 N.W.2d 1, 3 (Iowa 1999) as authority for this issue. In that case the supreme court concluded that a statute amended after the applicant filed notice of appeal applied to the applicant because it was a mere clarification of the law rather than a change in the law. In *Guzman,* however, there had been no prior judicial interpretation of the law. In this case, the supreme court had already interpreted chapter 901A in *Tornquist* prior to the 2000 amendment. Con-

struing the legislature's 2000 amendment to chapter 901A, which established a meaning of that chapter directly contrary to the supreme court's previous interpretation of it in *Tornquist,* as a mere clarification of the law would be effectively permitting the legislature to overrule a judgment of the supreme court. We decline to accept the State's argument that the 2000 amendment was a clarification, rather than a change, of the law.

Having concluded that the 2000 amendment to chapter 901A was a change in the law, and recognizing that the retroactive application to applicant of the stiffer penalties in the 2000 amendments would violate the ex post facto provisions of our federal and state constitutions, we conclude applicant's enhanced sentence was illegal. *See Corwin,* 616 N.W.2d at 602. We vacate the enhancement to applicant's sentence for sexual abuse and modify his sentence for that offense to twenty-five years.

## III. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Having vacated applicant's sentence, we conclude it is unnecessary to address whether applicant's appellate counsel was ineffective for failing to raise the *Tornquist* objection while his direct appeal, in the form of a rule 6.104 motion, was pending.

## IV. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### A. FAILURE TO OBTAIN PSYCHOLOGICAL EVALUATION

■ In his postconviction appeal applicant makes five additional claims of ineffective assistance of counsel. The first is that his counsel was ineffective for failing to obtain for him a psychological evaluation. The record shows that defense counsel did file an application for psychological

evaluation at State expense, which was denied by the district court on December 21, 1998. Defense counsel then filed a motion to reconsider, which was set for hearing on December 28. Apparently on or just before December 23, applicant was offered the plea bargain which he ultimately took, which reduced his first-degree kidnapping charge to third-degree kidnapping and eliminated the risk to applicant of serving a life sentence.

We review ineffective assistance of counsel claims de novo. *Osborn v. State* 573 N.W.2d 917, 920 (Iowa 1998). To establish a claim of ineffective assistance of counsel, applicant must demonstrate, by a preponderance of the evidence, both that his trial counsel failed to perform an essential duty and that prejudice resulted from that failure. *State v. Smothers*, 590 N.W.2d 721, 722 (Iowa 1999). We may dispose of the claim if applicant fails to demonstrate either element. *State v. Query*, 594 N.W.2d 438, 445 (Iowa Ct.App.1999). To sustain his burden of proof with respect to the duty element, applicant must overcome the strong presumption that counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *Smothers*, 590 N.W.2d at 722. Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel. *Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (citations omitted). Thus, claims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment. *Id.* (citation omitted).

Applicant claims that his counsel should have sought a psychological evaluation, presumably before the rush for a plea bargain made obtaining one too late. Additionally, applicant claims his suicidal acts the morning of the plea demonstrate his fragile mental state and further support the need for a psychological evaluation and his inability to enter into the plea voluntarily.

In reviewing applicant's postconviction application the district court found that as a matter of trial strategy defense counsel did not disclose to the court its basis for seeking a psychological evaluation, namely applicant's November 17 letter essentially admitting to his crime but detailing his childhood problems and current depressive condition. Because defense counsel had not provided the court with a basis for granting a psychological evaluation, it was denied. When counsel disclosed to the court that there was, in fact, a basis for the evaluation, but that the basis must remain confidential, the court set the matter for reconsideration. Before the reconsideration hearing was held, a plea agreement was reached.

On postconviction review, the court further noted that applicant's attorney was unaware of applicant's apparent attempts to hang himself the day of the plea and that the sentencing court's lengthy plea dialogue with applicant would rebut any claim of prejudice, as applicant's behavior before the sentencing court would indicate any psychological evaluation would prove him entirely competent.

■ We agree with the district court. The delay occurring in obtaining a psychological evaluation, according to defense attorney Cook, was a matter of trial strategy. Improvident trial strategy, miscalculated tactics, or mistakes in judgment do not necessarily amount to ineffective assistance of counsel. *Kane v. State*, 436 N.W.2d 624, 627 (Iowa 1989). Further, as the district court noted, trial counsel was

unaware of applicant's suicidal efforts the morning of the plea. Mr. Cook testified practically every client he works for is understandably despondent upon realizing he is facing a long-term sentence behind bars. There is no indication applicant's counsel had any reason to believe that his client's mental condition, given his situation, was extraordinary enough to require psychological evaluation or render him incapable of entering into a plea.

We further conclude, as did the district court, that applicant's dialogue with the court during sentencing evidences the lack of prejudice, even were there ineffective assistance. The sentencing court engaged in a lengthy dialogue, including asking applicant to articulate what acts of his he understood to constitute a particular charge. Applicant fully and completely participated in this dialogue. We find no ineffective assistance.

### B. FAILURE TO ENSURE APPLICANT'S UNDERSTANDING OF SENTENCE

■ Applicant's second allegation of ineffective assistance of counsel is that his counsel failed to ensure he understood his sentence. Specifically, applicant contends he was unaware that he would be required to serve eighty-five percent of his fifty-year sentence under Iowa Code sections 902.12 and 903A.2(b). Applicant argues he believed, based on his previous prison experience, that in pleading guilty he could be out of prison in twenty-one years after serving eighty-five percent of the sentence and receiving a day-for-day good conduct credit in the sentence.

As we have vacated applicant's enhanced sentence, applicant has a maximum sentence of twenty-five years. Eighty-five percent of that twenty-five years is twenty one and one quarter years, roughly what applicant claims he expected to serve.

There is therefore no prejudice, and we find it unnecessary to address this issue further. We note, however, in spite of applicant's claims to the contrary, that the record and sentencing transcript support the conclusion that applicant was fully informed by his lawyers and the court as to the length of his sentence, including the eighty-five percent rule requirements.

### C. FAILURE TO INFORM APPLICANT OF CHAPTER 229A

■ Applicant's third claim of ineffective assistance is that his counsel failed to advise him he would be subject to civil commitment, following his sentence, under chapter 229A of the Iowa Code. In fact, Mr. Taylor's deposition indicates he did inform applicant of the civil commitment possibilities under chapter 229A. Even had he not, however, counsel does not have the duty to inform applicant of collateral consequences to the plea. In this case the issue of civil commitment is one such collateral consequence. *See Mott v. State,* 407 N.W.2d 581, 582–83 (Iowa 1987). We affirm on this issue.

### D. FAILURE TO FILE MOTION TO DISMISS KIDNAPPING CHARGE

■ Applicant's fourth claim of ineffective assistance is that his counsel failed to file a motion to dismiss the first-degree kidnapping charge. Applicant claims the facts in his case clearly did not support that charge, and that he would have pursued a better plea had he not been focused on avoiding the potential life sentence of first-degree kidnapping. The State claims applicant has not preserved the error.

We will address the merits of this claim. We conclude applicant has shown us no prejudice. There is no reason to conclude applicant would have been offered a better plea had he not been charged with first-

degree kidnapping. Applicant received a fifty-year sentence due to the sexual abuse charge.[2] Applicant pled guilty to third-degree kidnapping and received a ten-year sentence to be served concurrently with his other offenses. We find no prejudice.

We further note, as did the district court, that during sentencing applicant's attorney Cook described how he had, in fact, researched the first-degree kidnapping issue in light of our decision in *State v. Heard*, No. 96–8081 (Iowa Ct.App., Aug. 22, 1997), had concluded the State probably could not prove first-degree kidnapping, but had advised applicant that if it could, he would face life in prison. During that sentencing hearing applicant agreed that, given this advice, it had been his decision as to how to proceed. Matters of strategy generally do not rise to the level of ineffective assistance. *See State v. Johnson*, 604 N.W.2d 669, 673 (Iowa Ct. App.1999) (citing *Hinkle v. State*, 290 N.W.2d 28, 34 (Iowa 1980)). We find no error.

### E. FAILURE TO CHALLENGE DNA EVIDENCE

■ Applicant's final claim of ineffective assistance is that his counsel improperly failed to raise claims which could have resulted in the dismissal of charges or at least suppression of evidence against him. Applicant claims there was no probable cause to arrest him for failure to register as a sex offender under section 692A.7 and that his consent to a blood test following this arrest was illegal as involuntary and as the fruit of an unlawful arrest. Applicant claims his counsel was ineffective for failing to pursue these challenges to the State's evidence. Applicant's counsel did not pursue these claims. Mr. Taylor deemed them frivolous and Mr. Cook reasoned the authorities would just get another blood sample if the current one was suppressed.

We defer to the applicant's attorneys' evaluations that his arrest was legal and that there was no purpose to pursue the blood test as the fruit of an unlawful arrest. An informant reported applicant's presence in the area and that she had lent applicant her gun. Officers knew applicant had not registered as a sex offender. Applicant's claims of being in town only temporarily were unsupported by the evidence. Further, following arrest the minutes of testimony show applicant was given his *Miranda* rights, which he does not dispute, and that applicant agreed to a blood test after being read those rights. Given applicant's history, his proximity to the crime in space and time, his connection to a weapon, and his gold ring, we conclude the attorneys were reasonable to conclude the State would likely have had probable cause to obtain another blood test if the first one was suppressed. We conclude applicant's attorneys did not render ineffective assistance for failing to pursue his claims challenging the DNA evidence.

### V. LEGALITY OF PLEA BARGAIN

■ Finally, applicant claims his plea should be set aside, as chapter 229A makes it impossible for the State to live up to its end of the plea bargain because the commitment provisions effectively give applicant a life sentence. Chapter 229A proceedings are not mandatory for sexual offenders. There is no indication they will occur in applicant's case. We decline to accept applicant's proposition that the very presence of chapter 229A makes it impossible for the State to fulfill its end of the plea bargain. We affirm on this issue.

---

**2.** That sentence is now reduced to twenty-five years.

CONVICTION AFFIRMED; SEN-
TENCE MODIFIED.