James Armond THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–11–00202–CR.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 15, 2011.

Decided May 9, 2012.

Tom Moran, Schneider & McKinney, P.C., Houston, for appellant.

Brett W. Ligon, District Attorney, Andrew James, Jason Larman, Assistant District Attorney, Conroe, for state.

Before GAULTNEY, KREGER, and HORTON, JJ.

## OPINION

DAVID GAULTNEY, Justice.

On motion for rehearing, we withdraw our opinion of March 7, 2012, and substitute this opinion. James Armond Thomas entered pleas of guilty to two counts of aggravated sexual assault of a child. After being sentenced to two concurrent seven-year terms of incarceration, Thomas filed a motion for new trial in which he contended that his guilty plea was involuntary. He asserted that he was not aware of all of the implications of his plea. He asserted that he had been deprived of effective assistance of counsel, because counsel failed to inform him that his guilty plea could lead to civil commitment. After conducting an evidentiary hearing, the trial court denied the motion for new trial. *See* Tex.R.App. P. 21.8(a). No findings of fact were requested or made. *See* Tex.R.App. P. 21.8(b). Thomas contends that the trial court erred in denying the motion for new trial.

### THE TRIAL COURT PROCEEDINGS

As an alleged repeat offender, Thomas, if convicted, faced a minimum fifteen-year sentence and a maximum term of life on each count. *See* Tex. Penal Code Ann. § 12.42(c)(1) (West Supp. 2011). On the morning set for Thomas's bench trial, counsel negotiated a plea bargain agreement for concurrent seven-year sentences. On the day of the plea, counsel did not discuss with Thomas the civil commitment program for sexually violent predators (SVP commitment). According to counsel, any discussions with Thomas "about that type of matter" would have occurred earlier in his representation of the appellant. Counsel was aware of the SVP commitment program but did not recall discussing SVP commitment with Thomas.

Thomas testified that counsel never discussed SVP commitment with him prior to

the time he entered his guilty plea. He had never heard of SVP commitment before he pled guilty. He stated that he has since "heard of it" although he is "not real familiar with it." He learned about SVP commitment from a person confined in the jail. Thomas's "impression" of SVP commitment "is you go to it and you never leave." Thomas indicated that if he had known that the SVP statute existed before he entered his pleas, he would not have pled guilty to either count of the indictment, nor would he have waived his right to a jury trial or his right to confront witnesses. On cross-examination, Thomas revealed that until that moment he had not been aware that a person has a right to a jury trial before being committed. He was not aware that the State must prove beyond a reasonable doubt that the person to be committed has a behavioral abnormality.

### THE SVP STATUTE

 Thomas argues his plea was involuntary. He contends that the waiver of his rights to a jury trial, confrontation, and compulsory process are invalid, because SVP commitment is a possible consequence of conviction, and he was not informed of this possible consequence. Due process requires that the waivers associated with a guilty plea be affirmatively shown on the record. See Boykin v. Alabama, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Generally, a court considers whether the defendant is aware of the direct consequences of the plea. Brady v. United States, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Mitschke v. State, 129 S.W.3d 130, 132 (Tex.Crim.App.2004) (consequences that are definite, immediate, and largely automatic). The right to effective assistance of counsel extends to the plea bargain process. Missouri v. Frye, — U.S. —, ———–——, 132 S.Ct. 1399, 1407–08, 182 L.Ed.2d 379, 80 U.S.L.W. 4253 (U.S. Mar. 21, 2011).

Thomas relies on Padilla v. Kentucky, — U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284, 78 U.S.L.W. 4235 (U.S. Mar. 31, 2010). In Padilla, the Supreme Court considered deportation, now called "removal," as a result of a criminal conviction. 130 S.Ct. at 1481–82. Dramatic changes to deportation law have made removal an integral part of the penalty that may be imposed on noncitizen defendants who plead guilty. Id. at 1480. Because of its close connection to the criminal process, removal as a result of a criminal conviction is "uniquely difficult to classify as either a direct or a collateral consequence" of a guilty plea. Id. at 1482. Accordingly, the Supreme Court concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." Id. Thomas equates SVP commitment to removal under deportation law.

Under the SVP statute, the Texas Department of Criminal Justice provides written notice to a multidisciplinary team of the anticipated release of a person who is serving a sentence for a sexually violent offense and who may be a repeat sexually violent offender. See Tex. Health & Safety Code Ann. § 841.021 (West Supp. 2011). The notice includes the Department's assessment of the likelihood that the person will commit a sexually violent offense after release or discharge. Id. The multidisciplinary team then assesses whether he is a repeat sexually violent offender and whether he is likely to commit a sexually violent offense after release or discharge. Tex. Health & Safety Code Ann. § 841.022(c) (West Supp. 2011). The multidisciplinary team notifies the Department of that assessment and recommends an assessment for a behavioral abnormality, as appropriate. Id. The Department

then assesses whether the person suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.023 (West Supp. 2011). The assessment includes an expert's clinical assessment based on testing for psychopathy, a clinical interview, and other assessments and techniques. *Id.* If as a result of the assessment the Department believes the person has a behavioral abnormality, the matter is forwarded to the civil division of the Special Prosecution Unit for legal action. Tex. Health & Safety Code Ann. §§ 841.002(1), 841.023 (West Supp. 2011).

Before he may be committed, the State must file a petition. Tex. Health & Safety Code Ann. § 841.041 (West 2010). The respondent is represented by the State Counsel for Offenders or by private counsel. Tex. Health & Safety Code Ann. §§ 841.005, 841.144 (West 2010). The person has access to the services of an expert, either paid or appointed. Tex. Health & Safety Code Ann. § 841.145 (West 2010). A jury trial is required if requested. Tex. Health & Safety Code Ann. §§ 841.061, 841.146 (West 2010). He has a right to appear at the trial, the right to present evidence, the right to cross-examine witnesses, and the right to view and copy all petitions and reports in the court file. Tex. Health & Safety Code Ann. § 841.061. The State must prove beyond a reasonable doubt that the individual is a sexually violent predator, and the jury determination must be unanimous. Tex. Health & Safety Code Ann. § 841.062 (West 2010).

A person is a sexually violent predator, and subject to civil commitment, if he is a repeat sexually violent offender and suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Tex. Health & Safety Code Ann. § 841.003 (West 2010). " 'Behavioral abnormality' means a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." Tex. Health & Safety Code Ann. § 841.002(2) (West Supp. 2011). SVP commitment provides for supervision and treatment of those who have "a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence." Tex. Health & Safety Code Ann. § 841.001 (West 2010).

An attorney who represents offenders in SVP commitment proceedings testified in support of Thomas's motion for new trial. According to the witness, 202 persons had been committed under the program at the time of the April 2011 hearing. Her office is involved in approximately 50 SVP commitment cases each year. Some of those cases do not go to trial, but the trials have all resulted in commitments. The witness could not state how many persons currently in the penitentiary "possibly are in that group" or how many persons are being screened for possible commitment. According to the witness, the Office of State Counsel for Offenders is "trying to discover that information, but we don't have access to it." Thomas presented no statistical evidence regarding the rate of commitment for offenders who have been incarcerated for sexually violent offenses.

The Council on Sex Offender Treatment reports to the Legislature biennially. *See* Tex. Occ.Code Ann. § 110.160 (West 2004).[1] The Council's December 2010 re-

---

1. Effective September 1, 2011, the SVP com- mitment function of the Council on Sex Of-

port, which included data from fiscal year 2006 through fiscal year 2010, states that an average of 35 cases are reviewed for behavioral abnormality assessment each month. *See* Biennial Report Regarding the Council on Sex Offender Treatment (Dec.2010), *available at* http://www.dshs. state.tx.us/csot/csot_creports.shtm.[2] Of the approximate number of 2,100 persons reviewed in that five-year period, 520 sex offenders were referred for a behavioral abnormality assessment. *Id.* at 10. As of August 31, 2010, a total of 175 of those 520 had been committed as sexually violent predators. *Id.* at 11. The Council's published reports would suggest that less than ten percent of those persons who were subjected to a review for SVP commitment were actually committed.

■ Both the SVP commitment process and deportation are collateral in the sense that they involve civil proceedings conducted in a forum other than the convicting court. *Padilla,* 130 S.Ct. at 1481; *see also* Tex. Health & Safety Code Ann. § 841.041 (West 2010). Although "it is not, in a strict sense, a criminal sanction[,]" and removal proceedings are "civil in nature," removal is a penalty. *Padilla,* 130 S.Ct. at 1481. Moreover, removal is "nearly an automatic result for a broad class of non-citizen offenders." *Id.* In contrast, SVP commitment is neither a penalty nor an automatic result of criminal convictions. *See In re Commitment of Fisher,* 164 S.W.3d 637, 650 (Tex.2005); *Beasley v. Molett,* 95 S.W.3d 590, 607–08 (Tex.App.-Beaumont 2002, pet. denied); Tex. Health & Safety Code Ann. § 841.081 (West 2010). As this Court reasoned in *Beasley,*

[t]he Act imposes certain restraints upon those found to be sexually violent predators, including outpatient treatment and other conditions similar to those imposed in community supervision. Tex. Health & Safety Code Ann. §§ 841.082, 841.083 (Vernon Supp. 2003) [now (West Supp. 2011) ]. However, such restraints in the context of involuntary civil commitments have historically been treated as civil, not punitive. [*Kansas v.*] *Hendricks,* 521 U.S. [346,] at 363, 117 S.Ct. 2072, [138 L.Ed.2d 501 (1997) ]. Commitment under the Act involves no finding of *scienter.* It does not involve retribution because it does not fix culpability for prior criminal conduct; rather, the Act addresses what it describes as a "menace"—a threat. *Id.* at 362, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501. A person committed under the Act has a behavioral abnormality, a congenital or acquired condition that, by affecting the person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense. *See* [Tex. Health & Safety Code Ann.] §§ 841.002(2), 841.003(a); *Hendricks,* 521 U.S. at 362–63, 117 S.Ct. 2072, 138 L.Ed.2d 501.

95 S.W.3d at 607.

The traditional due process analysis requires that a person be aware of the direct consequences of a plea of guilty for that plea to be considered voluntary. *See Brady,* 397 U.S. at 755, 90 S.Ct. 1463. In *Brady,* the petitioner changed his plea from not guilty to guilty after his co-defendant agreed to testify. 397 U.S. at 743,

---

fender Treatment was transferred to a new agency, the Office of Violent Sex Offender Management. *See* Tex. Gov't Code Ann. § 420A.010 (West Supp. 2011). The report requirement was also transferred to the new agency. *See* Tex. Gov't Code Ann. § 420A.007 (West Supp.2011).

**2.** This report was not made available to the trial court in the hearing on Thomas's motion for new trial. We take judicial notice of the reports.

749, 90 S.Ct. 1463. At the time, the aggravated kidnapping charge carried a possible death penalty, but that provision of the statute was later declared to be unconstitutional. *Id.* at 746, 90 S.Ct. 1463. Brady sued for habeas relief on a claim that he had been coerced into changing his plea because he feared receiving the death penalty. *Id.* at 743–44, 749, 90 S.Ct. 1463. The advice counsel gave Brady was correct when given. *Id.* at 756, 90 S.Ct. 1463. Although the petitioner alleged that his counsel exerted impermissible pressure upon him to plead guilty, *Brady* is a Fifth Amendment due process case. *Id.* at 744–45, 751, 90 S.Ct. 1463. In *Brady,* the Court stated: "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Id.* at 757, 90 S.Ct. 1463; *see also Ex parte Moussazadeh,* 361 S.W.3d 684, 691 (Tex.Crim.App.2012); ("[W]e continue to recognize the distinction between direct and collateral consequences[.]").

EFFECTIVE ASSISTANCE OF COUNSEL

Nevertheless, Thomas contends that he received ineffective assistance of counsel. *See Padilla,* 130 S.Ct. at 1480–81; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A guilty plea may be considered involuntary due to ineffective assistance of counsel in a guilty-plea proceeding. *See Ex parte Moussazadeh,* 361 S.W.3d 684, at 688–689; *Ex parte Harrington,* 310 S.W.3d 452, 458 (Tex.Crim.App.2010). *Padilla* explained the first part of the two-prong test for a Sixth–Amendment claim of ineffective assistance of counsel:

> Under *Strickland,* we first determine whether counsel's representation "fell below an objective standard of reasonableness." 466 U.S., at 688, 104 S.Ct.

2052, 80 L.Ed.2d 674. Then we ask whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.,* at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.,* at 688, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Padilla,* 130 S.Ct. at 1482. The first prong of *Strickland* depends upon the practice and expectations of the legal community. *Padilla,* 130 S.Ct. at 1482. Thomas argues that with regard to a defendant's decision to plead guilty, whether counsel's performance is reasonable under an objective standard of prevailing professional norms should depend upon whether an undisclosed consequence of a conviction was material to a client's decision to plead guilty or to go to trial. That argument also, and more directly, focuses attention on the second, or prejudice, prong of *Strickland. See Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) ("The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") (footnote omitted). In considering a claim of ineffective assistance of counsel, a court considers "the particular circumstances" of the individual case, and the first question is whether counsel's representation fell below an objective standard of reasonableness. *See*

*Ex parte Harrington,* 310 S.W.3d at 458–59.

To support his argument that prevailing professional norms require defense counsel to provide advice regarding possible future civil commitment, Thomas cites guidelines published by the State Bar of Texas. *See* State Bar of Texas, Performance Guidelines for Non–Capital Criminal Defense Representation. 74 Tex. B.J. 616, 620–37 (July 2011). These guidelines state that "[c]ounsel should investigate and explain to the client the prospective strengths and weaknesses of the case for the prosecution and defense, including the availability of prosecution witnesses (if known), relevant concessions and benefits subject to negotiation, and possible consequences of a conviction after trial." *Id.* at 628 (Guideline 6.3(A)).

■ Bar Association standards may serve as guides in our determination of the reasonableness of counsel's performance. *Padilla,* 130 S.Ct. at 1482. The Court in *Padilla* relied on a number of guidelines, many of which specifically mentioned deportation. *Id.* The single example of aspirational guidelines relied upon by Thomas does not specifically mention civil commitment, however. Moreover, a guideline regarding "possible consequences of a conviction" could refer to possible direct consequences; the standard does not clearly state that all possible collateral consequences must be addressed by counsel.

Prior to *Padilla,* the prevailing professional norms limited counsel's duty to advise a client to the direct consequences of a plea. *See Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997) ("We believe counsel was under no duty to inform applicant of the various ways his three guilty pleas could be used against him at a possible capital murder trial because such use is 'collateral,' and not a definite, practical

consequence of his guilty pleas."). *Padilla* established that prevailing professional norms impose a duty on counsel to advise a noncitizen defendant about deportation consequences of a criminal conviction, but the Supreme Court did not extend that duty beyond the immediate context of deportation. *Padilla,* 130 S.Ct. at 1481 (Whether it is appropriate to distinguish between direct and collateral consequences in defining reasonable professional assistance "is a question we need not consider in this case because of the unique nature of deportation."). Some cases from other jurisdictions indicate that defense counsel's failure to advise the defendant regarding possible future civil commitment will not support a challenge to the voluntariness of the defendant's plea of guilty. *See Blaise v. State,* 801 N.W.2d 627 (Iowa Ct.App. 2011) (Trial counsel had no duty to inform defendant, who pled guilty to first degree harassment, that he might possibly be subject to civil commitment as a sexually violent predator as such proceedings were not definite, immediate, or automatic); *United States v. Francis,* No. 5:04–CR–74–KSF, 2010 WL 6428639 (E.D.Ky.2011) (Certificate of appealability was denied on claim that counsel's failure to advise defendant regarding civil commitment rendered plea involuntary.); *Brown v. Goodwin,* No. 09–211(RMB), 2010 WL 1930574 (D.N.J.Dist. 2010) (Certificate of appealability was denied on claim that counsel's failure to advise defendant regarding civil commitment rendered plea involuntary.); *but see Bauder v. Dep't of Corrs. State of Fla.,* 619 F.3d 1272, 1275 (11th Cir.2010) (Habeas relief was granted where counsel erroneously advised defendant that stalking charge to which he pled guilty would not subject defendant to civil commitment.).

■ Although the Texas Bar guidelines provide some indication that possible consequences of a conviction are matters

that defense lawyers should consider and discuss with their clients, counsel's performance, to be constitutionally deficient, must have been so outrageous that no competent counsel would have engaged in it. *See Ex parte Harrington,* 310 S.W.3d at 459; *Andrews v. State,* 159 S.W.3d 98, 101 (Tex.Crim.App.2005). A concern in the SVP commitment process is the person's lack of volitional capacity. *See* Tex. Health & Safety Code Ann. § 841.002(2); *see Kansas v. Crane,* 534 U.S. 407, 412, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) and *Kansas v. Hendricks,* 521 U.S. 346, 351, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). The two convictions are a necessary but not sufficient basis for commitment under the statute. Unless counsel is convinced that his client has the condition for which the SVP commitment statute authorizes treatment, a competent lawyer might reasonably be concerned that advising a client he is subject to civil commitment would not accurately describe the commitment process. In the hearing on the motion for new trial, defense counsel stated that he was aware of SVP commitment, but he was not asked why he did not discuss the procedure with Thomas at the time Thomas accepted the plea bargain. SVP commitment is not a matter that could have been the subject of plea negotiations with the State. The SVP commitment process may end with screening. *See* Tex. Health & Safety Code Ann. § 841.022. (West Supp. 2011). The trial court could reasonably conclude Thomas failed to establish his counsel's performance fell below an objective standard of reasonableness.

■ Furthermore, the trial court on this record could reasonably conclude the prejudice prong of *Strickland* was not established. Thomas contends that but for counsel's failure to inform him, he would not have pleaded guilty and would have insisted on going to trial. *See Hill,* 474 U.S. at 59, 106 S.Ct. 366. He asserts that his unchallenged testimony shows that he would not have pled guilty if he had known of the possibility of future civil commitment. Thomas's statements during the hearing must be placed in context, however. As the finder of fact, the trial court could draw reasonable inferences from Thomas's testimony. *See Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004), *superseded in part on other grounds by* Tex.R.App. P. 21.8(b), *as recognized in State v. Herndon,* 215 S.W.3d 901, 905 n. 5 (Tex.Crim.App.2007). At the motion for new trial hearing, Thomas professed to know almost nothing about the process of SVP commitment, but he assumed that commitment would be automatic. From this record it appears that what Thomas knows about SVP commitment he learned in the county jail. Thomas's counsel for the motion for new trial hearing may have provided all of the information that Thomas alleges *trial counsel should have shared* with Thomas prior to the plea proceeding, but the record of the motion for new trial hearing does not affirmatively demonstrate that is the case. As the finder of fact, the trial court could have determined that Thomas's present assertion—that he would have insisted on going to trial if he had known of the existence of the SVP commitment statute—was not a result of informed knowledge about the statute and was not credible under the circumstances of this case. *See Padilla,* 130 S.Ct. at 1485 ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the *circumstances.*"); *Ex parte Moussazadeh,* 361 S.W.3d at 690–691 (On claim of involuntary plea, standard for harm analysis is whether the defendant would not have pled guilty but for erroneous advice.); *see also Kober v. State,* 988 S.W.2d 230, 233 (Tex.Crim.App. 1999) (Prejudice prong is a mixed question

of law and fact, and may turn on credibility determinations.).

### CONCLUSION

In determining whether a plea was involuntary due to erroneous advice of counsel, the Court of Criminal Appeals has distinguished "a definite and largely automatic result of a guilty plea" from a result that is "highly speculative." *See Ex parte Moussazadeh,* 361 S.W.3d at 689–690. Without believing that SVP commitment would be a definite and largely automatic result for an individual client, reasonably competent counsel would not necessarily have counseled a client on the matter.

The claim of ineffective assistance by counsel is not established on this record. The trial court did not err in overruling Thomas's motion for new trial. *See Hill,* 474 U.S. at 56, 106 S.Ct. 366. We overrule issues one, two, and three, and affirm the trial court's judgment.

AFFIRMED.