Filed 10/18/22; on transfer

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re VICTOR RAUL TELLEZ<br><br>on<br><br>Habeas Corpus. | D079716<br><br>(San Diego County<br>Super. Ct. No. SCE369196) |

ORIGINAL PROCEEDING in habeas corpus.  Petition denied.

Megan Marcotte, Chief Deputy Alternate Public Defender, Vickie Fernandes, Gilson Gray and Anthony Parker, Deputy Alternate Public Defenders, for Petitioner.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel, Nora Weyl, and Joy Utomi, Deputy Attorneys General, for Respondent.


By petition for writ of habeas corpus, Victor Raul Tellez asks this court to vacate his conviction based on a plea of guilty to committing a lewd and lascivious act on a child under the age of 14 years.  He complains his appointed counsel provided ineffective assistance by failing to advise him before the plea that he could be subject to lifetime commitment as a sexually

violent predator after service of the prison term.  As we shall explain, Tellez has not stated a prima facie case for relief.  We therefore deny the petition.

I.

BACKGROUND

The People charged Tellez with three counts of committing a lewd and lascivious act on a child under the age of 14 years (Pen. Code, § 288, subd. (a)), each of which involved a different victim.  Tellez pled guilty to one count, and as the factual basis for the plea admitted he willfully touched the back of a child under the age of 14 years with the intent to arouse his own sexual desires.  He also stipulated to a three-year prison term.  In exchange, the People dismissed the two other counts.  The court imposed the stipulated prison term on December 20, 2017.

Tellez was released from prison on parole on August 1, 2019.  He was immediately arrested and was arraigned on a petition for involuntary commitment under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.) the following day.  Tellez remains in jail while the commitment proceedings are pending.

On March 2, 2021, Tellez filed in the superior court a petition for writ of habeas corpus alleging ineffective assistance of counsel.  He alleged that as a result of inadequate investigation, counsel failed to obtain a potentially exculpatory psychological evaluation that when he touched the victim he was too intoxicated to form the specific intent required for conviction.  Tellez further alleged counsel was incompetent for failing to tell him that after release from prison he could be involuntarily committed for life under the SVPA.  Tellez claimed he would not have pled guilty and would have gone to trial but for counsel's deficient performance.  The superior court summarily denied the claim of inadequate investigation as untimely; and, after issuing

2

an order to show cause on the claim of failure to advise of the potential SVPA commitment and receiving a return from the district attorney, the court denied that claim as well.

Tellez continued to press his claims of ineffective assistance of counsel by filing a new petition for writ of habeas corpus in this court. We summarily denied the petition as procedurally barred and for failure to state a prima facie case for relief. The Supreme Court of California granted Tellez's petition for review and transferred the matter to this court with directions to vacate our summary denial order and to issue an order directing the Secretary of the Department of Corrections and Rehabilitation (the Secretary) "to show cause, why relief should not be granted on the ground trial counsel rendered ineffective assistance by failing to advise [Tellez] of the potential for commitment as a sexually violent predator as a consequence of his plea." We complied, and the Secretary filed a return and Tellez a traverse.

## II.

## DISCUSSION

A.  *Parties' Contentions*

Tellez contends his decision to waive his trial-related rights and plead guilty was not knowing, intelligent, and voluntary, because counsel failed to tell him that by doing so he could be subject to lifetime commitment under the SVPA. Analogizing to deportation as a consequence of a guilty plea by a noncitizen, Tellez contends an SVPA commitment is such "an extremely 'serious sanction' " that counsel must advise the defendant of the possibility of its imposition before the defendant pleads guilty, and if counsel fails to do so the defendant may withdraw the plea. He further contends that had he

3

been advised of a possible SVPA commitment, he would not have pled guilty and would have proceeded to trial. Tellez asks us to vacate his conviction.[1]

The Secretary responds that the petition is procedurally barred because it is untimely and because Tellez did not appeal the judgment of conviction and obtain the certificate of probable cause to attack the validity of the guilty plea required by Penal Code section 1237.5.[2] The Secretary further responds that, based on this court's recent decision that counsel had no duty to advise the defendant of the potential SVPA consequences of pleading guilty to felony indecent exposure (*People v. Codinha* (2021) 71 Cal.App.5th 1047 (*Codinha*)) and based on the lack of any independent objective corroborating evidence supporting Tellez's claim he would not have pled guilty had counsel advised

---

[1] The petition also included claims that counsel was ineffective for failing to conduct any pretrial investigation, failing to communicate with Tellez, and failing to obtain a psychological evaluation that allegedly would have shown he lacked criminal intent when he committed the lewd and lascivious act to which he pled guilty. We rejected those claims in our initial order summarily denying the petition. In vacating our order and directing us to issue an order to show cause, the Supreme Court of California limited the order to show cause to the claim that counsel was ineffective for failing to advise Tellez that an SVPA commitment was a potential consequence of his guilty plea. We therefore limit our discussion to that claim and again summarily deny Tellez's other claims. (See *In re Price* (2011) 51 Cal.4th 547, 549 [by limiting order to show cause to single claim, Supreme Court implicitly determined petitioner failed to state prima facie case on other claims]; *People v. Duvall* (1995) 9 Cal.4th 464, 475 [court will summarily deny habeas corpus petition if no prima facie case is stated].)

[2] Penal Code section 1237.5 requires a defendant who wants to attack the validity of a guilty plea to obtain from the trial court a certificate of probable cause for the appeal. "A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus." (*In re Chavez* (2003) 30 Cal.4th 643, 651.)

4

him of those consequences, Tellez has not stated a prima facie case of ineffective assistance of counsel. The Secretary urges us to deny the petition.

In reply, Tellez argues his petition is not time-barred, because he did not unreasonably delay by seeking habeas corpus relief within 17 months of the appointment of current counsel. On the merits, he again argues that as consequences of guilty pleas, SVPA commitment and deportation are analogous; and since counsel must advise about potential deportation, counsel must also advise about potential SVPA commitment. Tellez "recognizes the weight of the laboring oar in urging the Court to re-examine its decision [in *Codinha*, *supra*, 71 Cal.App.5th 1047] in a slightly different context." He suggests as bases for distinction that *Codinha* relied on the absence of a statutory duty to advise of SVPA consequences whereas he argues the duty "is Constitutionally enmeshed in the 6th Amendment," and that in *Codinha* the prospect of an SVPA commitment "remained in the realm of 'possibility' as a consequence" whereas in his case it is "presently occurring."

B. *Procedural Bars*

As noted, the Secretary raises two procedural bars to consideration of the merits of Tellez's claim that counsel was ineffective for failing to advise him of potential SVPA commitment: untimeliness and noncompliance with Penal Code section 1237.5. We decline to consider these procedural bars. "Because the Supreme Court transferred the case to us specifically to address the substantive issue[ ] of whether [counsel was ineffective for failing to advise Tellez of the potential SVPA consequences of his guilty plea], and because the issuance of an order to show cause indicates the Supreme Court has determined the claim is not procedurally barred [citations], we address the merits only." (*In re Smith* (2020) 49 Cal.App.5th 377, 386.)

5

C.    *Merits*

We now turn to whether Tellez has made out a claim of ineffective assistance of counsel entitling him to habeas corpus relief.  The federal and state Constitutions guarantee a criminal defendant the right to effective assistance of counsel.  (U.S. Const., 6th & 14th Amends.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 686 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215 (*Ledesma*).)  A defendant challenging a conviction on the ground that counsel was ineffective generally must show "counsel's performance was deficient" and "the deficient performance prejudiced the defense."  (*Strickland*, at p. 687; accord, *Ledesma*, at pp. 216-217.)  In the context of a challenge to a conviction based on a guilty plea, the defendant must show " 'counsel's representation fell below an objective standard of reasonableness' " and "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  (*Hill v. Lockhart* (1985) 474 U.S. 52, 57, 59 (*Hill*); accord, *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1136 (*DeJesus*); *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1420.)  As we discuss below, Tellez has established neither deficient performance nor prejudice.

1.    *Deficient Performance*

The deficient performance of which Tellez complains is counsel's failure to tell him before he pled guilty that after service of the prison term he could be involuntarily committed as a sexually violent predator for life.  Tellez cites no directly on-point authority that counsel had a duty to advise him of that consequence.  He instead compares SVPA commitment to deportation as a serious consequence of a guilty plea and relies mainly on *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), which held counsel performed deficiently by failing to advise a noncitizen that his plea of guilty to transportation of a

6

large amount of marijuana would make him subject to automatic deportation. Tellez acknowledges we found this comparison "inapt" in *Codinha*, *supra*, 71 Cal.App.5th at page 1065. We do so again in this case.

In *Padilla*, counsel advised the defendant to plead guilty and incorrectly advised him that he " ' "did not have to worry about immigration status" ' " because he had been a lawful permanent resident of the United States for more than 40 years. (*Padilla*, *supra*, 559 U.S. at p. 359.) Because "the relevant immigration statute [was] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction" and "his deportation was presumptively mandatory," the United States Supreme Court held that counsel had a duty to give correct advice and the failure to do so was constitutionally deficient performance. (*Id.* at pp. 368-369.) In holding that "counsel must inform her client whether his plea carries a risk of deportation," the high court stated that its "longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." (*Padilla*, at p. 374.)

The Legislature codified the holding of *Padilla*, *supra*, 559 U.S. 356, in 2015 when it enacted a statute providing that "[d]efense counsel shall provide accurate and affirmative advice about the immigration consequences of a proposed disposition." (Pen. Code, § 1016.3, subd. (a); see *id.*, § 1016.2, subd. (h) [stating legislative intent to codify *Padilla*]; *Codinha*, *supra*, 71 Cal.App.5th at p. 1065 & fns. 8 & 9 [discussing codification of *Padilla*].) As we explained in *Codinha*, however, "[t]here are no similar statutes or indications of a legislative intent that require defense counsel to advise their clients of the potential SVP[A] consequences of the clients' guilty pleas." (*Codinha*, at p. 1066.)

7

Tellez responds that "[his] argument is not that there is a statutory duty, but that the duty to advise of the consequences of a[n] SVP[A] commitment is Constitutionally enmeshed in the 6th Amendment." He contends "[a]ny lawyer who represents the accused must have meaningful disclosures and conversations with their clients as to the most important part of the penalty they may face," and relies on *Padilla* and another case (*People v. Soriano* (1987) 194 Cal.App.3d 1470 (*Soriano*)) in which the courts ruled counsel performed deficiently by failing to advise noncitizens of the deportation consequences of their guilty pleas. As we shall explain, we are not persuaded advisement of a potential SVPA commitment is constitutionally required.

In imposing a constitutional duty on defense counsel to warn a noncitizen defendant about deportation as a consequence of a guilty plea in *Padilla*, the United States Supreme Court noted that "as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." (*Padilla, supra*, 559 U.S. at p. 364, fn. omitted.) The high court went on to explain that because "deportation is a particularly severe 'penalty' " that is "intimately related to the criminal process" and is "nearly an automatic result for a broad class of noncitizen offenders," the court found it " 'most difficult' to divorce the penalty from the conviction in the deportation context." (*Id.* at pp. 365-366.) Citing standards promulgated by the American Bar Association and other organizations, the high court also stated, "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." (*Id.* at pp. 367-368.) The high court further noted "the terms of the relevant immigration statute [were] succinct, clear, and explicit in

8

defining the removal consequence for Padilla's conviction." (*Id.* at p. 368.)[3] The *Soriano* court similarly relied on American Bar Association standards and the close and clear connection between conviction and deportability in requiring counsel to advise the defendant of the deportation consequences of the guilty plea. (*Soriano*, *supra*, 194 Cal.App.3d at pp. 1479-1482.)

These factors do not support imposition of a duty on counsel to advise a client that civil commitment under the SVPA is a potential consequence of a guilty plea to certain sex crimes. "Unlike the potential immigration consequences for a noncitizen defendant convicted of certain crimes, potential SVP[A] consequences are neither 'enmeshed' in and 'intimately related to the criminal process' nor 'nearly an automatic result' for many offenses." (*Codinha*, *supra*, 71 Cal.App.5th at p. 1069.) Rather, commitment under the SVPA requires an additional, multistep process. Prison officials first screen a person convicted of a qualifying sex crime to determine whether the person is likely a sexually violent predator. (Welf. & Inst. Code, § 6601, subd. (b).) If so, the person is referred for evaluation by two experts to determine whether the person has a mental disorder that makes the person likely to commit acts of sexual violence without appropriate treatment or confinement. (*Id.*, § 6601, subds. (d)-(f).) If the two experts agree, a request that a petition for civil commitment be filed is sent to the designated counsel of the county where the person committed the sex crime. (*Id.*, § 6601, subds. (d), (f), (h)(1), (i).) If the designated counsel agrees that commitment is appropriate,

---

[3] "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance . . . , other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." (8 U.S.C. § 1227(a)(2)(B)(i), quoted in *Padilla*, *supra*, 559 U.S. at p. 368.)

counsel then files a petition in the superior court. (*Id.*, § 6601, subd. (i).) If a petition is filed, the court holds a hearing to determine whether there is probable cause to believe the person is likely to engage in sexually violent behavior. (*Id.*, § 6602, subd. (a).) If the court finds probable cause, a trial is conducted on whether the person has a mental disorder that makes the person likely to engage in sexually violent acts upon release from prison. (*Ibid.*) The person has the right to a jury or court trial (*id.*, § 6603, subd. (a)), at which the trier of fact must find beyond a reasonable doubt that the person is a sexually violent predator in order to commit the person (*id.*, § 6604). Hence, a finding that Tellez is a sexually violent predator subject to civil commitment "would result only from new determinations years [after his plea] of issues such as whether [he] was *at that point* mentally disordered and likely to reoffend [citations]—matters which [were] not admitted by his plea." (*People v. Moore* (1998) 69 Cal.App.4th 626, 632; accord, *Codinha*, at pp. 1067-1068.) Unlike the deportation consequence at issue in *Padilla*, an SVPA commitment is neither a "presumptively mandatory" consequence of a guilty plea nor "nearly an automatic result" of applying a "succinct, clear, and explicit" statute to the plea. (*Padilla*, *supra*, 559 U.S. at pp. 366, 368, 369.)

It also does not appear "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of [SVPA commitment]." (*Padilla*, *supra*, 559 U.S. at p. 367.) Tellez has cited no professional guidelines or other similar sources supporting imposition of such a duty, even though it is his burden to show "counsel's representation fell below an objective standard of reasonableness." (*Strickland*, *supra*, 466 U.S. at p. 688; accord, *In re Hernandez* (2019) 33 Cal.App.5th 530, 543.) Our own independent research found no clear direction from professional organizations on the subject. A guideline from the National Legal Aid and

10

Defender Association states that "counsel should be fully aware of, and make sure the client is fully aware of . . . other consequences of conviction such as deportation, and civil disabilities." (NLADA, Performance Guidelines for Criminal Defense Representation (4th ed. 2006) Guideline 6.2(a)(3).) Deportation is specifically mentioned, but civil commitment as a sexually violent predator is not. A guideline from the American Bar Association states: "To the extent possible, defense counsel should determine and advise the defendant, sufficiently in advance of the entry of any plea, as to the possible collateral consequences that might ensue from entry of the contemplated plea." (ABA Stds. for Crim. Justice (3d ed. 1999) std. 14-3.2(f), p. 116.) The associated commentary asserts defense counsel should be aware of the collateral consequences of sex crime convictions, because they are likely to carry "serious and wide-ranging collateral consequences." (*Id.*, com. to std. 14-3.2(f), p. 127.) The commentary urges counsel to "be familiar with, and advise defendants of, all of the possible effects of conviction," but acknowledges that courts do not require "an expansive debriefing" on "every likely effect of a plea in all circumstances." (*Id.*, com. to std. 14-3.2(f), p. 126.) Instead, the commentary states, "[c]ourts generally distinguish between the 'direct' and 'collateral' consequences of a plea of guilty, holding that while the defendant must receive advice regarding the former, counsel's and the court's failure to consult with the defendant regarding the latter will not invalidate a plea." (*Id.*, com. to std. 14-3.2(f), p. 126, fn. 25.) Noting the lack of statutes or case law that might establish prevailing professional norms (*Codinha, supra,* 71 Cal.App.5th at p. 1068) and mindful that "we must be especially careful about recognizing new grounds for attacking the validity of guilty pleas" (*Padilla,* at p. 372; see *Codinha,* at p. 1069), in *Codinha* we adhered to the established distinction between direct and collateral consequences of guilty

11

pleas to conclude that "[f]ailure of defense counsel to advise the defendant of even the serious consequences associated with civil commitment proceedings is not a basis on which to set aside a guilty plea" (*Codinha*, at p. 1069).[4]

We adhere to our conclusion in this case and note that in doing so we agree with the majority of courts in other jurisdictions that have ruled on the matter. For example, the Missouri Court of Appeals repeatedly has held defense counsel has no duty to advise the defendant of the possibility of an SVPA commitment, because it is a collateral consequence of a guilty plea. (*Carter v. State* (Mo.Ct.App. 2007) 215 S.W.3d 206, 210-211; *Harris v. State* (Mo.Ct.App. 2006) 204 S.W.3d 371, 374-375; *Morales v. State* (Mo.Ct.App. 2003) 104 S.W.3d 432, 435-437.) Earlier this year, the same court noted that unlike deportation, civil commitment under the SVPA "is not 'uniquely difficult' to classify as direct or collateral" and is not "a 'presumptively mandatory' consequence" of a sex crime conviction, and therefore " '[t]he well-established principle that plea counsel is not ineffective for failing to inform a defendant of the collateral consequences of a guilty plea is unaffected by *Padilla*." (*Fields v. State* (Mo.Ct.App. 2022) 642 S.W.3d 774, 778, 779.) The Supreme Court of Wisconsin similarly "rel[ied] on the many factors that differentiate the possibility of [an SVPA] commitment from the unique consequence of deportation," including that commitment is not an automatic result of the guilty plea and serves a rehabilitative rather than a punitive

---

4 The United States Supreme Court did not have to consider "[w]hether that distinction [was] appropriate" in *Padilla* "because of the unique nature of deportation." (*Padilla, supra*, 559 U.S. at p. 365.) "Even in *Padilla* [the court] did not eschew the direct-collateral divide across the board. [Citation.] Rather, [the court] relied on the special 'nature of deportation'—the severity of the penalty and the 'automatic' way it follows from conviction—to show that '[t]he collateral versus direct distinction [was] ill-suited' to dispose of Padilla's claim." (*Chaidez v. United States* (2013) 568 U.S. 342, 355.)

12

purpose, to conclude that the "Sixth Amendment does not require defense counsel to inform a client about the possibility of civil commitment." (*State v. LeMere* (Wis. 2016) 879 N.W.2d 580, 598-599.)  Other courts have reached the same conclusion for the same or similar reasons.  (See, e.g., *Kim v. Director, Va. Dept. of Corrections* (E.D.Va. 2015) 103 F.Supp.3d 749, 755-758; *Watrous v. State* (Fla.Dist.Ct.App. 2001) 793 So.2d 6, 8-11; *Gully v. State* (Iowa Ct.App. 2002) 658 N.W.2d 114, 121; *Hamm v. State* (S.C. 2013) 744 S.E.2d 503, 504-505; *Thomas v. State* (Tex.Ct.App. 2012) 365 S.W.3d 537, 542-544; see also *State v. Schaefer* (Kan. 2016) 385 P.3d 918, 927 [holding counsel was not ineffective for failing to advise defendant who pled guilty of potential SVPA commitment when it was "no more than a remote possibility," but stating that on other facts probability of commitment may be high enough to impose duty].)[5]  These cases support our conclusion in *Codinha* that the failure of counsel to advise the defendant of the potential SVPA consequences

---

[5]     The highest court of at least one state has held that "defense counsel has a minimal duty to advise a defendant who pleads guilty to a triggering offense subject to the provision of the Sexually Violent Persons Commitment Act that he will be evaluated for and may risk involuntary commitment after completing his prison term." (*People v. Hughes* (Ill. 2012) 983 N.E.2d 439, 457.)  In imposing that duty, the court reasoned that "where the consequence is severe, certain, and sufficiently enmeshed in the criminal process the sixth amendment right to counsel may give rise to a basis for withdrawing a plea." (*Id.* at p. 456.)  We agree an SVPA commitment may be a "severe" consequence of pleading guilty to a qualifying sex crime, but as explained in the text, we disagree it is "certain" or "sufficiently enmeshed in the criminal process" such that it supports imposition of a constitutional duty on counsel to advise the defendant of the potential consequence before pleading guilty. (See *Codinha*, *supra*, 71 Cal.App.5th at p. 1069 ["potential SVP[A] consequences are neither 'enmeshed' in and 'intimately related to the criminal process' nor 'nearly an automatic result' for many offenses"]; *State v. LeMere*, *supra*, 879 N.W.2d at pp. 597-598 [disagreeing with *Hughes*].)

of his guilty plea did not violate prevailing professional norms.  (*Codinha, supra*, 71 Cal.App.5th at pp. 1068-1069.)

Tellez nevertheless urges us to re-examine our decision in *Codinha, supra*, 71 Cal.App.5th 1047, in what he calls "a slightly different context."  He asserts that in *Codinha* "the prospect of a[n] SVP[A] commitment remained in the realm of 'possibility' as a consequence," because the defendant had not yet served his prison term, but in this case he has been released from prison and "faces the very real prospect of a lifetime in a State hospital" based on the pending SVPA commitment proceeding against him.  This difference between the two cases does not affect our decision here.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective *at the time*."  (*Strickland, supra*, 466 U.S. at p. 689, italics added.)  "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, *viewed as of the time of counsel's conduct*."  (*Id.* at p. 690, italics added; accord, *Ledesma, supra*, 43 Cal.3d at p. 216 [court must "assess the reasonableness of counsel's acts or omissions . . . under the circumstances as they stood at the time that counsel acted or failed to act"].)  As was the situation in *Codinha*, when counsel here failed to advise the client that if he pled guilty he could be committed under the SVPA after he served his prison term, any such commitment would occur, if at all, years in the future and was far from certain.  Moreover, as we have discussed, the professional norms prevailing at the time of the plea did not clearly require counsel to give such advice and still do not do so.  The fact that Tellez *now* faces an SVPA commitment

14

proceeding therefore does not mean counsel performed deficiently by failing to advise him of that potential consequence *when he pled guilty.*

### 2. *Prejudice*

We turn finally to the prejudice prong of Tellez's claim of ineffective assistance of counsel. Tellez bears the burden to show that had counsel advised him of the potential SVPA commitment consequence before he pled guilty, he would not have done so and instead would have proceeded to trial. (*Hill, supra,* 474 U.S. at p. 59; *DeJesus, supra,* 37 Cal.App.5th at p. 1136.) The only evidence Tellez offered concerning prejudice is his own declaration, in which he stated: "Had my attorney told me about the possibility of lifetime incarceration as a sexually violent predator because of my guilty plea, I would not have pled guilty." Such a self-serving "allegation that trial counsel failed to properly advise a defendant is meaningless unless there is objective corroborating evidence supporting [the] claimed failures." (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 223-224.) "Our Supreme Court has stated that a defendant's claim that 'he would not have pled guilty if given competent advice "must be corroborated independently by objective evidence." ' " (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664; see *People v. Vivar* (2021) 11 Cal.5th 510, 530; *In re Resendiz* (2001) 25 Cal.4th 230, 253 (lead opn. of Werdegar, J.); *In re Alvernaz* (1992) 2 Cal.4th 924, 938.) "A contrary holding would lead to an unchecked flow of easily fabricated claims." (*Alvernaz,* at p. 938.) Tellez "offered no contemporaneous evidence such as an affidavit and/or testimony by trial counsel, or counsel's files, notes, or . . . correspondence." (*Abdelsalam,* at p. 664.) We " 'may reject an assertion that is not supported by an explanation or other corroborating circumstances.' " (*Ibid.*)

### III.

### DISPOSITION

The petition is denied.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

16